**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA

           Plaintiff,

v.

JARA JENKINS CARMICHAEL,

           Defendant.



**REPORT AND**
**RECOMMENDATION**
14-CR-6136 (FPG)

### Preliminary Statement

On December 9, 2014, defendant Jara Jenkins Carmichael (hereinafter "Jenkins-Carmichael" or "defendant") was indicted on one count of conspiracy to distribute cocaine and cocaine base in violation of 21 U.S.C. § 846. See Second Superseding Indictment (Docket # 55). On March 2, 2015, the defendant filed an omnibus motion seeking various forms of pretrial relief. (Docket # 107). The government filed a response in opposition to defendant's motion. (Docket ## 121, 122, 123). On April 10, 2015, defendant filed a supplemental affidavit in further support of her omnibus motion. (Docket # 127). On April 13, 2015, the Court heard arguments from the parties' attorneys and resolved the majority of defendant's omnibus motion. See Order (Docket # 135). The Court reserved decision on the defendant's motions to (1) suppress wiretap evidence, (2) suppress GPS warrants, (3) suppress evidence obtained from the search warrants, (3) sever her trial from her co-defendants, (4) dismiss Count Two of the Indictment, and (5) suppress statements made

by the defendant during a proffer session.[1]

The following is my Report and Recommendation as to these remaining pretrial motions.

## Discussion

**A. The Eavesdropping Warrants:** Jenkins-Carmichael claims standing to contest communications intercepted on phone number 585-441-4728 and the government does not contest that assertion. The interceptions began on March 13, 2014, when Monroe County Judge James Piampiano issued an Order based on the supporting affidavit of DEA Special Agent Sabatino Smith. On April 11, 2014, Monroe County Judge Victoria Argento signed an Extension Order for that warrant. Interceptions of communications on phone number 585-441-4728 ceased on April 23, 2014.

The defendant's challenge to the wiretap Orders is cryptic at best. Defense counsel takes issue with the March 13, 2014 Order of Judge Piampiano because, according to defendant, Special Agent Smith erroneously interpreted a particular conversation between Jenkins-Carmichael and co-defendant Lemuel Jones to be evidence of drug trafficking. See Defendant's Omnibus Motion (Docket # 107) at

---

[1] By letter dated April 17, 2015, the government informed the Court and the defendant that it was reserving the right to use statements made by the defendant during a proffer session. See Exhibit 2 annexed to Government's Response in Opposition to Supplemental Motion (Docket # 140-2). On May 8, 2015 and May 11, 2015, the defendant and the government submitted supplemental briefs on the government's ability to use these statements against the defendant at trial. See Docket ## 139, 140.

2

20-21. Specifically, the defendant argues that Special Agent Smith unfairly interpreted the conversation between her and Lemuel Jones to be a conversation about the delivery of and payment for illegal drugs. Id. Defendant also describes the conversation as concerning an allegation that a car owned by the defendant was used by Antoine Shannon to deliver cocaine and otherwise support a drug distribution conspiracy. Id. According to defense counsel, "Agent Smith's so-called 'interpretation' of this conversation is fanciful at best and certainly does not justify a Warrant for Eavesdropping concerning the cellphone of Mrs. Jenkins-Carmichael." Id. at 21-22.

The problem with the defendant's argument is that the challenged conversation does not appear in Special Agent Smith's affidavit submitted in support of the wiretap application.[2] See Exhibit "A" annexed to Government's Response in Opposition (Docket # 121-1). Accordingly, it cannot provide the basis to suppress the wiretap Order or taint any of the subsequent warrants or Orders as the "fruit" of any illegality. Because no other defect in the challenged wiretap application has been alleged or identified, it is my Report and Recommendation that the defendant's motion to suppress conversations intercepted pursuant to the March 13, 2014 Order and the April 11, 2014 extension Order be **denied**.

---

[2] The specific conversation of which the defendant complains is actually found in an affidavit submitted by Special Agent Smith in support of a March 2014 application to install a GPS tracking device on the defendant's vehicle. See Exhibit "B" annexed to Government's Response in Opposition (Docket # 121-2) at 7.

3

**B. The GPS Warrant:** The defendant moves to suppress "all evidence acquired" pursuant to the March 27, 2014 Order allowing the installation of a GPS tracking device on the "2006 Gray Mercury Montego bearing New York State Registration GFM-1806 with VIN Number 1MEHM41126G614066" registered to Jenkins-Carmichael. Defendant's Omnibus Motion (Docket # 107) at 22-23. Relying on Franks v. Delaware, 438 U.S. 154 (1978), the defendant contends that the affidavit supporting the GPS warrant "contains such errors, misrepresentations and falsehoods such that it demonstrates a reckless disregard for the truth and serves to invalidate the warrant." Defendant's Omnibus Motion (Docket # 107) at 22-23.

The specific "falsehood[]" identified by the defendant is a sentence found on the last page of Special Agent Smith's supporting affidavit in which he states "your affiant believes that **Antoine Shannon** is currently using" the Mercury Montego to engage in drug trafficking operations.[3] Id. at 7 (emphasis added). The government concedes that Special Agent Smith was not referring to Antoine Shannon, but was referring to Jenkins-Carmichael. According to counsel for the government, the reference to Shannon was "a typographical error which resulted from the fact that Agent Smith used a prior version of an affidavit in support of a GPS warrant for Antoine Shannon's car as a template upon which to draft the Tracker Affidavit for Jenkins-Carmichael's Mercury Montego." See

---

[3] Antoine Shannon is a co-defendant of Jenkins-Carmichael.

4

Government's Response (Docket #121) at page 17. The government argues that "[i]f the reference to Shannon is eliminated, the remaining allegations in the Smith Tracker Affidavit for Jenkins-Carmichael's Mercury Montego are still sufficient to establish probable cause" that defendant's car was being used to further the drug conspiracy. Id.

I agree. In United States v. Salameh, the Second Circuit instructed that:

> [t]o be entitled to a Franks hearing, a defendant must make a "substantial preliminary showing" that: (1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the judge's probable cause finding. If, after setting aside the allegedly misleading statements or omissions, the affidavit, nonetheless, presents sufficient information to support a finding of probable cause, the district court need not conduct a Franks hearing.

152 F.3d 88, 113 (2d Cir. 1998)(internal citations omitted).

Here, Jenkins-Carmichael has failed to make the necessary showing for the Court to order a Franks hearing. Even assuming she could show a "deliberate falsehood or reckless disregard for the truth," given the other evidence set forth in Special Agent Smith's affidavit, the reference to Shannon using the vehicle was hardly essential to a judicial finding of probable cause. The supporting affidavit of Special Agent Smith incorporates by reference the facts set forth in the previous wiretap applications obtained during the course of the Montague drug trafficking investigation, including the

5

March 13, 2014 Order authorizing the interception of Jenkins-Carmichael's cell phone.[4] In addition, Special Agent Smith's affidavit set forth details regarding telephone calls that were intercepted pursuant to the wiretap of defendant's phone and surveillance observations he had made while investigating the connection of the vehicle to drug trafficking activities of the defendant and co-defendant Lemuel Jones. See Exhibit "B" annexed to Government's Response in Opposition (Docket # 121-2). Relying on his experience as well as his knowledge of the broader investigation, Special Agent Smith averred that use of a GPS tracker would allow the "officers to continue to surveil the target without possibly compromising the investigation." Id.

Based on the foregoing, I find that after setting aside the erroneous sentence about Antoine Shannon, Special Agent Smith's affidavit sufficiently established the probable cause necessary to find that installation of the GPS tracker would yield evidence of drug trafficking. United States v. Longo, 70 F. Supp. 2d 225, 254 (W.D.N.Y. 1999)(finding a Franks hearing unnecessary where alleged misrepresentations and omissions in the supporting affidavit were

---

[4] In seeking the Tracker Warrant, Special Agent Smith erroneously stated that Judge Argento signed the March 13, 2014 eavesdropping warrant. See Exhibit "B" annexed to Government's Response in Opposition (Docket # 121-2) at 6. It seems this is another typographical mistake made by Special Agent Smith, as the March 13, 2014 eavesdropping warrant was apparently signed by Judge Piampiano. It goes without saying that these warrant applications should be proofread more carefully.

6

"inconsequential to the finding of probable cause"). Accordingly, it is my Report and Recommendation that Jenkins-Carmichael's motion to suppress the evidence derived from the tracking device be **denied**.

**C. The Search Warrants:** On June 26, 2014, Monroe County Court Judge Victoria M. Argento signed warrants authorizing searches of numerous locations and persons connected to the "Montague Drug Trafficking Organization." See Exhibit "D" annexed to Government's Response in Opposition (Docket # 122). The search warrant application was supported by a fifty-three page affidavit from Special Agent Smith. See Exhibit "E" annexed to Government's Response in Opposition (Docket # 123). Special Agent Smith's affidavit described the scope of the investigation and specifically incorporated by reference the Orders, applications, and affidavits of twenty-three eavesdropping warrants that had been obtained during the course of the investigation. Id. Among the various persons and premises searched, Jenkins-Carmichael challenges three "locations": (1) her residence, located at 200 Sherman Street in the city of Rochester; (2) her vehicle, a 2006 Mercury Montego; and (3) her person. See Defendant's Omnibus Motion (Docket # 107) at 24.

According to Jenkins-Carmichael, several defects in the warrant application impugned Judge Argento's probable cause determination. Jenkins-Carmichael argues that the allegations of her involvement in the drug trafficking operation were based solely on Special Agent Smith's "interpretations of innocuous language" overheard during the

7

course of the wiretap application. Id. After reviewing Special Agent Smith's affidavit, I disagree. Special Agent Smith's search warrant application set out in detail a large and complex drug distribution operation and described the various roles of different members of the conspiracy. According to Special Agent Smith, law enforcement's investigation revealed that Jenkins-Carmichael's role in the Montague drug distribution network included "renting and utilizing" an apartment in Ithaca, New York where cocaine and money were "stashed" while "en route to cocaine customers." See Exhibit "E" annexed to Government's Response in Opposition (Docket # 123) at 98, 107-08. Although Jenkins-Carmichael was not often seen there, utilities in the Ithaca apartment were in her name and her car was seen at the apartment. Id. In the spring of 2014, the government intercepted several telephone conversations which either included or concerned Jenkins-Carmichael. Id. Although the words "cocaine" or "drugs" may never have been used by the participants in the conversations, the totality of the circumstances set forth in the affidavit fairly suggests that the Ithaca apartment was being used by the enterprise in furtherance of their drug distribution efforts and that Jenkins-Carmichael was a knowing and willing participant in those efforts. Id. It is, of course, true that Special Agent Smith interpreted the language used during the conversations as coded drug language. But his expertise in drug investigations was set forth in the supporting affidavit and it is

8

permissible for a judge to rely on such expert views when making a probable cause determination. Indeed, "[a] finding of probable cause might rest solely on the fact that an individual in a recorded conversation speaks in an incoherent manner and makes ambiguous statements that an agent interprets as narcotics-related." United States v. Cancelmo, 64 F.3d 804, 808 (2d Cir. 1995)("Although the conversations may have had an innocent meaning, it can hardly be said that the agents' interpretations were unreasonable or implausible.").

Next, Jenkins-Carmichael argues that the information in the warrant supporting probable cause was stale. See Defendant's Omnibus Motion (Docket # 107) at 28. Based on my review of the warrant application, I disagree. In addressing staleness challenges, the Court must consider "the nature of the conduct alleged to have violated the law." Rivera v. United States, 928 F.2d 592, 602 (2d Cir.1991)(quoting United States v. Martino, 664 F.2d 860, 867 (2d Cir.1981), cert. denied, 458 U.S. 1110 (1982)). "[N]arcotics conspiracies are the very paradigm of the continuing enterprises for which the courts have relaxed the temporal requirements of non-staleness." United States v. Rowell, 903 F.2d 899, 903 (quoting United States v. Feola, 651 F.Supp. 1068, 1090 (S.D.N.Y.1987), aff'd, 875 F.2d 857 (2d Cir.), cert. denied, 493 U.S. 834 (1989)(holding that an eighteen-month delay between an informant's statements and a warrant application will not render the

9

information stale)). Here, the warrant was signed by Judge Argento on June 26, 2014 and executed that same day. See Exhibit "D" annexed to Government's Response in Opposition (Docket # 122). Special Agent Smith's supporting affidavit describes conduct involving and conversations concerning Jenkins-Carmichael that occurred as late as May 10, 2014, when co-defendant Lemuel Jones was allegedly trying to contact Jenkins-Carmichael to let her know that cocaine was going to be arriving at the Ithaca apartment. Id. The period of several weeks between the last conversation concerning Jenkins-Carmichael and the issuance of the warrant did not render the information supporting probable cause stale. Moreover, Special Agent Smith informed Judge Argento that, based on his training and experience, narcotics traffickers "frequently maintain at their residence" drugs, currency and records related to drug trafficking "in order to maintain and finance their ongoing narcotics business." Exhibit "D" annexed to Government's Response in Opposition (Docket # 122) at 131. "Such representations contained in an affidavit for a search warrant are sufficient to support a finding of probable cause." United States v. Morales, 280 F.Supp.2d 262, 269 (S.D.N.Y. 2003); see also United States v. Akel, No. 15-CR-6005L, 2015 WL 6756189, at *1 (W.D.N.Y. Nov. 4, 2015) report and recommendation adopted, No. 15-CR-6005L, 2016 WL 768657 (W.D.N.Y. Feb. 29, 2016)(holding that affiant's opinion in large scale drug distribution case that "narcotics traffickers are likely to maintain records of their

10

activities, may be sufficient to establish probable cause to believe that [defendant] was likely to maintain records relating to his drug dealing in his home and in the business that he owned"); United States v. Gambino, 734 F.Supp. 1084, 1109 (S.D.N.Y.1990)(finding probable cause to search drug defendant's home where agent's affidavit contained information concerning defendant's involvement in a narcotics conspiracy and agent's expert opinion that individuals involved in narcotics trafficking are likely to keep incriminating evidence in their homes).

Finally, Jenkins-Carmichael argues that the provision of the warrant which authorized law enforcement to enter her home without announcing their presence was invalid. See Defendant's Omnibus Motion (Docket # 107) at 30. Jenkins-Carmichael does not argue that the affidavit lacked factually-sufficient justification for the "no knock entry" authorization, but rather that the authorization to dispense with the "knock and announce" requirement was based on "false statements" in the warrant application. Id. This argument appears to be boilerplate: no false statements are identified in this section of counsel's moving papers and the Court's review of Special Agent Smith's supporting affidavit has failed to identify any material or reckless misstatements. Moreover, the "no knock" authorization in this sophisticated drug distribution investigation seems justified. See United States v. Williams, 82 F. App'x 248, 250 (2d Cir. 2003)(holding that a reasonable threat of destruction

11

of evidence or danger to investigating officers is sufficient to justify a "no knock" warrant); see also United States v. McCloud, No. 04-CR-6179T, 2006 WL 1144509, at *1 (W.D.N.Y. Apr. 28, 2006) aff'd, 303 F. App'x 916 (2d Cir. 2008).

In any event, Jenkins-Carmichael has failed to offer any evidence to suggest that the searching officers did not rely upon the warrant in good faith. See United States v. Leon, 468 U.S. 897 (1984); see also United States v. Cancelmo, 64 F.3d at 807 ("Evidence seized pursuant to a warrant for which actual probable cause does not exist or which is technically deficient is admissible if the executing officers relied on the warrant in objective good faith.")(internal quotations omitted)). For all of these reasons, it is my Report and Recommendation that Jenkins-Carmichael motion to suppress the evidence obtained as a result of the search of her person, her car, and her residence be **denied**.

D. **Motion to Dismiss Count Two:** Defense counsel makes a boilerplate argument that Count Two of the Indictment, which charges Jenkins-Carmichael with participation in a conspiracy to distribute cocaine and cocaine base in violation of 18 U.S.C. § 846, is "impermissibly vague." Defendant's Omnibus Motion (Docket # 107) at 31-32. For the reasons set forth in the Government's Response in Opposition, see Docket # 121 at 23-24, this argument lacks legal merit. See generally United States v. Mullen, 450 F. Supp. 2d 212, 218 (W.D.N.Y. 2006).

E. **Motion for Severance:** Jenkins-Carmichael also moves to have her case severed from her twelve co-defendants named in the Indictment pursuant to Rules 12(b)(5) and 14 of the Federal Criminal Rules of Procedure. See Defendant's Omnibus Motions (Docket # 107) at 9. Defendant claims that she will be "severely prejudiced" if her case is not severed from her co-defendants' because the evidence against them will likely influence potential jury members to find her "guilty by mere association." Id. Jenkins-Carmichael argues that she is named in only one count — Count Two — of the twelve count Indictment, and fears that evidence used to prosecute the other counts will "create 'spillover prejudice' that will further prejudice her." Id. at 11.

If the joinder of defendants "for trial appears to prejudice a defendant or the government, Rule 14 of the Federal Rules of Criminal Procedure allows a court to order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). However, despite this discretion, the Supreme Court has instructed that "[j]oint trials play a vital role in the criminal justice system" because "[t]hey promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." Zafiro v. United States, 506 U.S. 534, 537 (1993) (internal quotation marks and citations omitted). Thus, while the decision whether to sever a case lies within the district court's "sound discretion," severance

13

should be granted only where there is a danger of substantial prejudice. Id. at 539. Severance is appropriate, for example, "if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Id. at 539. Where, as here, "'spillover evidence' is alleged as a ground for a Rule 14 severance, the defendant's burden to demonstrate substantial prejudice resulting in an unfair trial is heavy." United States v. Mullen, 243 F.R.D. 54, 74 (W.D.N.Y. 2006).

Jenkins-Carmichael has not met the heavy burden of proving that her role in the alleged narcotics conspiracy warrants severance of her case. "[I]t is well established that differing levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials." United States v. Chang An-Lo, 851 F.2d 547, 557 (2d Cir. 1988)(internal quotation omitted); see also United States v. Diaz, 176 F.3d 52, 102–03 (2d Cir. 1999) (finding joint trial proper even though it would result in the admission of testimony about other crimes in which a co-defendant played no part); United States v. Canania, No. S2-4:06 CR 33 ERW, 2006 WL 2043036, at *2 (E.D. Mo. July 19, 2006) ("There is a strong presumption against severing properly joined defendants, especially in a conspiracy case."). To be sure, as in any large multi-defendant conspiracy case involving defendants that played varying roles in the conspiracy, Jenkins-Carmichael

14

might suffer some prejudice by sitting before a jury while the government introduces evidence unrelated to her alleged conduct. But, it is "not enough to demonstrate that separate trials would have increased the chances of [her] acquittal; rather, the appellant must show prejudice so severe as to amount to a denial of a constitutionally fair trial." United States v. Spinelli, 352 F.3d 48, 54-55 (2d Cir. 2003)(internal quotation and citations omitted); see also United States v. Miller, 116 F.3d 641, 679 (2d Cir.1997) (noting that spillover prejudice may be remedied through clear judicial instructions). In short, Jenkins-Carmichael's arguments for severance — which center on "guilt by association" and "spillover prejudice" — do not satisfy the heavy burden to prove substantial prejudice. Accordingly, it is my Report and Recommendation that her motion for severance be **denied**.

F. Motion to Invalidate the Proffer Agreement: On May 8, 2015, the defendant filed a supplemental letter brief seeking to invalidate the terms of her proffer agreement with the government. (Docket # 139). In the agreement, Jenkins-Carmichael consented to certain terms — including agreeing to allow the government to use her statements during the proffer session to "rebut" any of her assertions at trial - in the hopes of negotiating a plea. Id. at 2. Now, because the proffer was a prerequisite for plea negotiations and because a plea was never reached, the defendant argues that the above term violates her Sixth Amendment right to mount a defense and

15

receive effective assistance of counsel. Id.

In the Second Circuit, proffer agreements are interpreted according to the general principles of contract law. See, e.g., United States v. Liranzo, 944 F.2d 73, 77 (2d Cir. 1991). When the language in the agreement is clear, it "must be interpreted to give effect to the intent of the parties." United States v. Barrow, 400 F.3d 109, 117 (2d Cir. 2005)(internal quotations and citations omitted). Here, the language of the proffer agreement is unambiguous: the parties intended to allow the government to use Jenkins-Carmichael's statements at the proffer "as substantive evidence to rebut, directly or indirectly, any evidence offered or elicited, or factual assertions made, by or on behalf of [Jenkins-Carmichael] at any stage of" the criminal proceeding. See Exhibit 1, Proffer Agreement, annexed to Government's Response in Opposition to Supplemental Motion (Docket # 140-1).

Perhaps realizing the clarity of the language in the agreement, the defendant now argues that it violates Rule 410 of the Federal Rules of Evidence in a way that impinges on her constitutional right to present a meaningful defense at trial. See Supplemental Letter Brief (Docket # 139) at 1-2. According to Rule 410, "statement[s] made during plea discussions with an attorney for the prosecuting authority" are inadmissible if no plea is reached. Fed. R. Evid. 410. To be sure, Rule 410 is intended to "promote plea negotiations by permitting defendants to talk to prosecutors without sacrificing

16

their ability to defend themselves" in the event that negotiations are fruitless. Barrow, 400 F.3d at 116. Its scope, however, is not unlimited. See United States v. Mezzanatto, 513 U.S. 196, 205 (1995)("[Rule 410] create[s], in effect, a privilege of the defendant, and, like other evidentiary privileges, this one may be waived or varied at the defendant's request."). Indeed, using Rule 410 to invalidate a proffer agreement's waiver term that contemplates rebuttal at trial would interfere with "the criminal justice system's legitimate goal of encouraging plea bargaining in appropriate circumstances." United States v. Velez, 354 F.3d 190, 195 (2d Cir. 2004)("If the proffer agreement is not enforced, a defendant will have less incentive to be truthful, for he will know that his proffer statements cannot be used against him at trial as long as he does not testify, even if he presents inconsistent evidence or arguments."). This rings especially true when, as here, both the defendant and her attorney reviewed the proffer agreement before committing to its terms. Thus, while sympathetic to the defendant's position, the Court is unwilling to recognize that the potential existence of a disparity in negotiating power automatically renders the proffer agreement unconstitutional or coercive.[5] See, e.g.,

---

[5] It is worth noting that, under Rule 403 of the Federal Rules of Evidence, the trial court has "considerable discretion to exclude relevant evidence that may inject 'unfair prejudice' or 'confusion' into the jury's resolution of the issues in dispute." See United States v. Barrow, 400 F.3d at 109. Should the Government seek to introduce defendant's statements in a way that unfairly prejudices her, Judge Geraci has the discretion to exclude those statements.

Mezzanatto, 513 U.S. at 210 ("The mere potential for abuse of prosecutorial bargaining power is an insufficient basis for foreclosing negotiation altogether."). After all, it is precisely this sort of waiver term that incentivizes defendant's to be truthful during plea negotiations and encourages prosecutors to take the first step toward cooperation. See United States v. Velez, 354 F.3d at 195. Therefore, it is my Report and Recommendation that defendant's supplemental motion to invalidate the proffer agreement (Docket # 139) be **denied**.

## Conclusion

For the foregoing reasons, it is my Report and Recommendation that defendant's motion to suppress evidence obtained from the wiretap, GPS, and search warrants, motion to sever, and motion to dismiss Count Two of the indictment (Docket # 107) be **denied**. Further, is my Report and Recommendation that defendant's supplemental motion to invalidate the proffer agreement and to exclude statements made during the proffer session (Docket # 139) also be **denied**.

SO ORDERED.

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated:   March 11, 2015
         Rochester, New York

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 59(b)(2) of the Local Rules of Criminal Procedure for the Western District of New York.[1]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. See, e.g., Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** Thomas v. Arn, 474 U.S. 140 (1985); Wesolek v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b)(2) of the Local Rules of Criminal Procedure for the Western District of New York, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." **Failure to comply with the provisions of Rule 59(b)(2) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

SO ORDERED.

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated:   March 11, 2016
         Rochester, New York

---

[1] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(D) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the fourteen days allowed for filing objections has elapsed. United States v. Andress, 943 F.2d 622 (6th Cir. 1991), cert. denied, 502 U.S. 1103 (1992); United States v. Long, 900 F.2d 1270 (8th Cir. 1990).